Opinion filed September 18, 2008











 
 
  
 
 







 
 
  
 
 




Opinion filed September
18, 2008

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                 ____________

 

                                                          No. 11-07-00328-CR

                                                    __________

 

                                   JOHN MICHAEL HAYS, Appellant

 

                                                             V.

 

                                         STATE
OF TEXAS, Appellee

 



 

                                         On
Appeal from the 118th District Court

 

                                                         Howard
County, Texas

 

                                                    Trial
Court Cause No. 11937

 



 

                                              M E
M O R A N D U M   O P I N I O N

The
jury convicted John Michael Hays of murder and assessed his punishment at
confinement for ninety-nine years.  We affirm.

In
his sole point of error, appellant argues that the evidence is factually
insufficient to support the conviction.  Specifically, appellant contends that
the jury=s failure to
find that he acted in sudden passion resulted in a verdict that was so against the
great weight and preponderance of the evidence that the verdict is manifestly
unjust.








In
order to determine if the evidence is factually sufficient, the appellate court
reviews all of the evidence in a neutral light.  Watson v. State, 204
S.W.3d 404, 414 (Tex. Crim. App. 2006) (overruling in part Zuniga v. State,
144 S.W.3d 477 (Tex. Crim. App. 2004)); Johnson v. State, 23 S.W.3d 1,
10-11 (Tex. Crim. App. 2000); Cain v. State, 958 S.W.2d 404, 407-08
(Tex. Crim. App. 1997); Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim.
App. 1996).  Then, the reviewing court determines whether the evidence supporting
the verdict is so weak that the verdict is clearly wrong and manifestly unjust
or whether the verdict is against the great weight and preponderance of the
conflicting evidence.  Watson, 204 S.W.3d at 414-15; Johnson, 23
S.W.3d at 10-11.

On
January 11, 2007, several ranch workers discovered the victim=s body in a concrete
viaduct on FM 820.  The victim was lying facedown.  His head was
blackened, and he appeared to be about twenty years old.  The sheriff=s department was contacted,
and Howard County Deputy Sheriff David Lynn Wood responded.

Deputy
Wood testified that the victim=s
body was in Avery bad
shape.@  It appeared
the body had been Adumped@ over the guardrail and had
rolled seventeen feet into the viaduct below.  Deputy Wood found blood on the
guardrail, and the blood under the body was coagulated.  The body had begun to
decompose, and the head was blackened.  A multi-colored blanket and a dead
feral hog were also found in the viaduct near the victim.

Deputy
Wood testified that the victim was identified through prison records by his
tattoos.  The victim weighed 136 pounds and was 5' 6" tall.  Deputy Wood
described appellant as weighing 325 - 350 pounds and being over 6' tall.

Forensic
pathologist Dr. Thomas Richard Beaver, M.D. conducted the autopsy.  When the
victim=s body was
received, it was Amostly
nude.@  The body had
started decomposing, and the lips were beginning to mummify.  The only broken
bones were in the head, and there was no presence of alcohol or illegal drugs. 
There were bruises on the face, back of the hands, arms, knees, chest, and
abdomen.  The bruises were too numerous to count and were the result of blunt
force impacts to the body.   The spleen was lacerated.








Dr.
Beaver described the injuries to the head as Avery,
very severe.@  The
skull was Avery
fractured@ and Acracked like an egg.@  The injuries were more
extreme than those sustained in a car accident and were Aincompatible with life.@  Dr. Beaver testified that the blunt force
impacts were mostly caused by hands and feet.

C.F.
testified that she knew both the victim and appellant.  Appellant was very
protective of her and treated her like a daughter.  She called appellant AUncle Mike@ and stayed with him from
time to time.  C.F. stated that she was fifteen at the time of trial.  She
testified that she and the victim had sex once and that her testimony at trial
was the first time she had told anyone about it.  C.F. testified that the
victim had made Ainappropriate
moves@ toward her and
that she had not wanted to have sex with him.

C.F.
said that the victim had Atalked
crap@ about appellant=s son and called appellant=s daughter a Aslut.@  He had also talked Abad@ about appellant=s
wife.

On
December 31, 2006, she was at appellant=s
home.  The victim had slapped her face, leaving the imprint of his hand on her
face.  She was mad, and she let appellant know.  However, she did not tell
appellant about the prior sexual intercourse.

Later
that evening, appellant shoved the victim into a bookcase.  The victim fought
back but fell to the ground.  C.F. testified that appellant and three other men
started kicking the victim.  C.F. stated that it seemed like they kicked him
for an hour.  She was standing in the hall and was scared to move.  During the
beating, C.F. made eye contact with the victim, and he mouthed A[h]elp me@ to her.  C.F. stated that,
when the victim stopped moving, the beating stopped.  There was blood Aall over@ the floor.  The men washed
down the door, wrapped the victim in a comforter, and told C.F. they were
taking him to the hospital.  C.F. was told by two of the men Anot to mention it.@  Appellant never said
anything to her.

C.F.
stated that appellant and three others ripped up the carpet.  They burned the
carpet with the victim=s
clothes.  C.F. believed that, even though she was like a daughter to appellant,
the victim slapping her was not the cause of the beating.

Law
enforcement officers recovered blood from the floors in appellant=s home.  The blood was
tested and was determined to be the victim=s.








Appellant
did not call any witnesses at the guilt/innocence phase.  The record reflects
that, through cross-examination of the State=s
witnesses, appellant began developing his theory that he acted as a result of
sudden passion.  At the punishment phase, appellant=s daughter testified that he was a very
protective father and that, while he was in prison, she was raped.  Appellant
had been very upset that he was not there to protect her.  She also testified
that the victim had slapped her and choked her but that she had not told her
father because she was afraid of what he would do to the victim.  She had told
appellant that the victim had Asaid
some things@ about her
and about her son. Appellant had become upset about this.

Appellant=s employer testified that
appellant was an excellent worker, that he never had seen him get angry, and
that he was very protective of his family.  One of appellant=s close friends described
him as a Apretty solid
citizen@ who was a Agood hand and good man@ and did not get Ainto any kind of trouble at
all.@

Appellant
testified that, while he was a member of the Aryan Circle, the Aryan Circle had
had nothing to do with this situation.  Appellant described the Aryan Circle as
a prison gang and stated that when both he and the victim joined there was no Ablood in, blood out@ requirement.  Appellant
stated that the Aryan Circle had Abranched
over into the free world@
and was now an Aethnic
organization.@ 
Appellant Amade it@ his Adeal@ to help other Abrothers@ when they got out of
prison.

Appellant
testified that, while he was in a state jail in 2002, his daughter was raped. 
The man received twenty-five years for aggravated kidnapping of a child and
forty-five years for sexual assault of a child.  His daughter was very upset
that he had left, and he promised her that he would not let anybody Ain this world hurt [her] as
long as@ he lived.

Appellant
described how he had helped the victim out when the victim was first released
from prison.  Appellant bought the victim clothes, got him a job, provided him
with money, and helped him out after the victim was fired from that job.  At
one time, the victim lived in appellant=s
rent house.  Appellant also talked to the Ahead
of the Mexican Mafia@
in San Angelo on the victim=s
behalf.  Appellant stated the victim had had a hard time and that he had Agriped@ at other people when they
were mad at the victim.

Appellant
stated that he had found out that the victim had called his wife a Afat, nasty bitch@ and had said that Aall she could cook was
Hamburger Helper.@  He
also had heard that the victim had joked about taking appellant=s daughter away from her
Hispanic boyfriend.  Appellant was Apretty
angry@ with the victim
and was going to confront him about these things.








On
New Year=s Eve,
appellant testified that he went in his house and saw C.F. with a welt on the
side of her face.  He could see the print of someone=s hand on her face.  She was crying. 
Appellant asked her, AWhat
happened to your face, Baby Girl?@ 
The victim walked in the house at that time, and C.F. pointed to him. 
Appellant testified that he Afelt
like [he] was going to catch on fire.@ 
He Asaw little black
spots@ and had Anever felt like that in
[his] life.@  He felt
anger and hurt.  He was terrified and scared.  Appellant testified that  he
regretted what had happened, that nobody deserved to die, and that he wished he
had never met the victim.  Appellant stated that he felt the world had come to
an end that night for probably everybody that knew both the victim and
himself.  Appellant regretted that he did not give ATwo Guns [the victim=s nickname] a chance to write his family.@

Appellant
testified that he had Adreamed
day after day about that rape of [his] daughter@
while he was in prison and that he would hear her saying, ADaddy, help me.@  Appellant also testified
that he was very protective of C.F. because she Adidn=t have nobody@ and Adidn=t have no stable life.@  Appellant stated that, when he saw the slap
mark on C.F.=s face,
he saw his daughter in C.F.  Appellant testified, AI guess you could say that I lost it.@

In
assessing his punishment, the jury rejected appellant=s claim that he had acted as a result of sudden
passion.[1]  The jury, as
the finder of fact, is the sole judge of the weight and credibility of the
witnesses= testimony. 
Tex. Code Crim. Proc. Ann.
art. 36.13 (Vernon 2007), art. 38.04 (Vernon 1979).  Due deference must be
given to the factfinder=s
determination, particularly concerning the weight and credibility of the
evidence.  Johnson, 23 S.W.3d at 9; Jones v. State, 944 S.W.2d
642 (Tex. Crim. App. 1996).  This court reviews the factfinder=s weighing of the evidence
but cannot substitute its judgment for that of the factfinder.  Cain,
958 S.W.2d at 407; Clewis, 922 S.W.2d at 133.  We have the authority to
disagree with the factfinder=s
determination Aonly
when the record clearly indicates such a step is necessary to arrest the
occurrence of a manifest injustice.@ 
Johnson, 23 S.W.3d at 9.








After
reviewing all of the evidence in a neutral light, we find that the evidence is
factually sufficient to support the verdict.  A rational jury could have
concluded that appellant=s
attack on the victim was not conducted under the immediate influence of sudden
passion arising from adequate cause.  Tex.
Penal Code Ann. '19.02(d)
(Vernon 2003).  The jury could have reasonably believed C.F.=s testimony that appellant=s actions were the result
of something other than the slap to her face.  The jury could have reasonably
concluded that the nature and the force behind appellant=s actions were not the result of sudden
passion and did not arise from adequate cause.  The evidence was undisputed
that, while appellant initiated the attack, he beat the victim and disposed of
the victim=s body
together with three other men.  The evidence is also undisputed that appellant
together with three other people burned the victim=s clothes and the bloody carpet.  The evidence
supporting the verdict is not so weak that the verdict is clearly wrong and
manifestly unjust.  Likewise, the verdict is not against the great weight and
preponderance of the conflicting evidence.  The sole issue is overruled.

The
judgment of the trial court is affirmed.

 

 

PER CURIAM

 

September 18,
2008

Do not publish. 
See Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









[1]Tex. Penal Code Ann. ' 19.02(d) (Vernon 2003) provides that, if a defendant
convicted of murder establishes by a preponderance of the evidence at the
punishment phase of trial that he caused the death under the immediate
influence of sudden passion arising from an adequate cause, the offense is a
second degree felony.